1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   BRIAN SLOME, SB# 238134
2   E-Mail: Brian.Slome@lewisbrisbois.com
   KENNETH C. FELDMAN, SB# 130699
3   E-Mail: Ken.Feldman@lewisbrisbois.com
   LINDSEY.BALL, SB# 299707
4   E-Mail: Lindsey.Ball@lewisbrisbois.com
   550 West C Street, Suite 1700
5  San Diego, California 92101
   Telephone: 619.233.1006
6  Facsimile: 619.233.8627

7  Attorneys for Defendants, Bona Law P.C.,
   Jarod Bona, David Codell, Aaron Gott,
8  Luke Hasskamp, and Luis Blanquez

9                 UNITED STATES DISTRICT COURT

10             SOUTHERN DISTRICT OF CALIFORNIA

11

12  BRIAN P. MANOOKIAN,                    Case No. 21CV0562 WQH BLM

13          Plaintiff,              **MEMORANDUM OF POINTS AND
                                    AUTHORITIES IN SUPPORT OF
14      vs.                         MOTION TO DISMISS**

15  BONA LAW P.C., JAROD BONA,      **FED RULES CIV. P. R. 12(b)(6)**
    DAVID CODELL, AARON GOTT,
16  LUKE HAASKAMP, AND LUIZ
    BLANQUEZ,                       Date:   July 19, 2021

17
            Defendants.            **"NO ORAL ARGUMENT UNLESS
18                                  REQUESTED BY THE COURT."**

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................... 5

II. STATEMENT OF PERTINENT FACTS ................................................. 8

  A.  The BPR Files a Petition for Discipline Against Manookian ............... 8

  B.  The Tennessee Supreme Court Temporarily Suspends Manookian ...................................................................................... 8

  C.  Manookian Hires Bona Law to File Suit Against BPR Members ......... 9

  D.  The Tennessee Supreme Court Dissolves Manookian's Suspension *After* Bona Law Files Suit; Manookian Violates His Ethical Obligations Again .................................................. 11

  E.  The BPR Defendants Move to Dismiss Manookian's Complaint ........ 12

  F.  The District Court Dismisses Manookian's Claims for Money Damages and Stays His Request for Equitable Relief ......................... 13

  G.  Bona Law Files a Motion for Judgment Pursuant to FRCP 54(b), Based on the District Court's Ruling ................................................... 14

  H.  Manookian's Appeal is Dismissed ...................................................... 15

  I.  Meanwhile, the BPR Had Sought Additional Discipline Against Manookian ...................................................................................... 16

  J.  Manookian's Legal Malpractice Complaint ........................................ 16

III. LEGAL STANDARD FOR A MOTION TO DISMISS ........................... 17

IV. THIS COURT SHOULD DISMISS MANOOKIAN'S CLAIM BECAUSE BONA LAW AND ITS ATTORNEYS EXERCISED PROFESSIONAL JUDGMENT AND ARE IMMUNE FROM ALLEGATIONS THAT THEY BREACHED THE STANDARD OF CARE ..................................................................................................... 18

  A.  Manookian Cannot Prove that He Would Have Recovered Damages Against Individual BPR Members ........................................ 21

  B.  Sound Public Policy Prevents Manookian from Asserting His Damages Claims ................................................................................. 25

  C.  Manookian Cannot Establish Causation Because His Federal Constitutional Challenges to Tennessee Supreme Court Rule 12.3 Are Barred by Claim Preclusion ................................................. 25

V.  MANOOKIAN FAILS TO STATE FACTS SUFFICIENT TO SET FORTH A CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY ..................................................................................................... 26

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

VI.   THE COMPLAINT FAILS TO SUFFICIENTLY ALLEGE CLAIMS AGAINST LUIS BLANQUEZ AND LUKE HASSKAMP..........................27

VII.   CONCLUSION ...............................................28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

2

3

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                          <u>Page(s)</u>

4

5

*Akins v. Edmondson*,
    207 S.W.3d 300 (Tenn. Ct. App. 2006) ........................................... 26

6

7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................ 17

8

*Atl. Richfield Co. v. USA Petrol. Co.*,
    495 U.S. 328 (1990) ........................................................................ 23

9

10

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1990) .......................................................... 17

11

12

*Bankers Tr. Co. v. Mallis*,
    435 U.S. 381 (1978) ........................................................................ 19

13

14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................ 17

15

16

*Bush v. Chancery Court*,
    No. 18-5215, 2018 U.S. App. LEXIS 30239 (6th Cir. Oct. 25, 2018)............. 27

17

18

*CenTra, Inc. v. Estrin*,
    538 F.3d 402 (6th Cir. 2008) .......................................................... 26

19

20

*Esposito v. Hollander*,
    No. 2:09-cv-728-FtM-29SPC, 2011 U.S. Dist. LEXIS 9790 (M.D.
    Fla. Feb. 1, 2011)........................................................................... 27

21

22

*In re Fifth Third Early Access Cash Advance Litig.*
    925 F.3d 265 ................................................................................... 14

23

24

*Firestone Tire & Rubber Co. v. Risjord*,
    449 U.S. 368 (1981) ........................................................................ 19

25

26

*Gibson v. Trant*,
    58 S.W.3d 103 (Tenn. 2001) .......................................................... 22

27

*Horton v. Hughes*,
    971 S.W.2d 957 (Tenn. Ct. App. 1998) .......................................... 18

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

*Huron Valley Hospital, Inc. v. Pontiac*,
    792 F.2d 563 (6th Cir. 1986) ............................................................................. 19

*Hyland v. Liberty Mut. Fire Ins. Co.*,
    885 F.3d 482 (7th. Cir. 2018) ............................................................................ 21

*HyPoint Technology, Inc. v. Hewlett-Packard Co.*
    (6th Cir. 1991), 949 F.2d 874 ........................................................................... 23

*Image Outdoor Adver., Inc. v. CSX Transp., Inc.*,
    No. M2000-03207-COA-R3-CV, 2003 Tenn. App. LEXIS 431,
    2003 WL 21338700 (Tenn. Ct. App. June 10, 2003) (unpublished) ................. 26

*Kranendonk v. Gregory & Swapp, PLLC*,
    320 P.3d 689 (Utah Ct. App. 2014) ................................................................... 22

*Lazy Seven Coal Sales, Inc. v. Stone & Hinds*,
    813 S.W.2d 400 (Tenn.1991) ............................................................................. 22

*Moncier v. Jones*
    557 Fed. Appx. 407 (6th Cir. 2014) ........................................................... 5, 7, 24

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) ............................................................................. 17

*Nw. Publications, Inc. v. Crumb*
    (9th Cir. 1985), 752 F.2d 473 ........................................................................... 23

*Otis v. City of Chi.*,
    29 F.3d 1159 (7th Cir. 1994) (en banc) ............................................................ 19

*Parker v. Brown*,
    317 U.S. 341 (1943) .......................................................................................... 12

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998) ............................................................................. 17

*Pierce County v. Guillen*,
    537 U.S. 129 (2003) .......................................................................................... 26

*Powell v. Potterfield*,
    2014 WL 2582765 (S.C. Ct. App. March 19, 2014) ......................................... 22

*Richardson-Merrell, Inc. v. Koller*,
    472 U.S. 424 (1985) .......................................................................................... 19

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-8115-3262.1

2

Case No. 21CV0562 WQH BLM

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

*RSM Richter, Inc. v. Behr Am., Inc.*,
   729 F.3d 553 (6th Cir. 2013) ............................................................................ 20

*Sammons v. Rotroff*,
   653 S.W.2d 740 (Tenn. Ct. App. 1983) ......................................................... 26

*Shearon v. Seaman*,
   198 S.W.3d 209 (Tenn. Ct. App. 2005) ......................................................... 22

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ........................................................................... 17

*Summers v. Leis*,
   368 F.3d 881 (6th Cir. 2004) ........................................................................... 14

*Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*
   991 F.2d 1501 (9th Cir. 1993) ........................................................................ 22

*Wash. Mut. Bank v. Superior Court*,
   24 Cal. 4th 906 (Cal. 2001) ............................................................................. 22

*Woodruff v. Tomlin*,
   616 F.2d 924 (6th Cir. 1980) ........................................................................... 18

*Younger v. Harris*,
   401 U.S. 37 (1971) .................................................................................... 13, 14

*Zonge v. Woodall*,
   No. M1998-00800-COA-R3-CV, 2000 Tenn. App.
   LEXIS 681 (Ct. App. Oct. 5, 2000) ................................................................ 25

**Statutes**

15 U.S.C. § 15 ................................................................................................... 10

28 U.S.C. § 1257 .............................................................................................. 26

42 U.S.C. § 1983 ......................................................................................... 10, 14

42 U.S.C. § 1988 .............................................................................................. 10

Sherman Act .................................................................................................... 10

**Other Authorities**

First Amendment ................................................................................. 10, 15, 16

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

Fed. R. App. P. 4......................................................................................6, 14

2

Fed. R. Civ. P. 8..............................................................................................17

3

Fed. R. Evid. 201 ...........................................................................................17

4

5

Federal Rule of Civil Procedure Rule 54............................................*passim*

6

Federal Rule Civil Procedure Rule 58......................................... 15, 19, 21

7

Rule 12 ..............................................................................................................17

8

Tennessee Rule of Professional Conduct 9, § 12.3 .............................. 8, 9

9

Tennessee Supreme Court Rule 9, § 12.3..................................... 10, 11, 12

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# I.    __INTRODUCTION__

This lawsuit accusing Bona Law P.C. and some of its lawyers of malpractice is meritless and dismissible. Brian Manookian—a thrice-suspended Tennessee medical-malpractice lawyer—blames his post-suspension federal constitutional and antitrust lawyers for the financial consequences of his own misconduct, which led the Tennessee Supreme Court to declare him a "threat of substantial harm to the public." That effort must fail because: (1) Defendants exercised professional judgment and therefore did not breach a professional duty of care owed to Manookian; and (2) Manookian cannot allege an error by the defendants that caused a compensable injury since Manookian's own professional misconduct destroyed any chance he had of prevailing in the underlying lawsuit. Moreover, Defendants' motion to dismiss should be granted because Manookian cannot state a claim for breach of fiduciary duty and fails to allege facts to support a claim for relief against Luis Blanquez and Luke Hasskamp.  These flaws cannot be cured through amendment.

After Manookian's license to practice law was suspended the first time by an emergency order of the Tennessee Supreme Court, Manookian hired Bona Law to file a federal lawsuit on his behalf. He claimed to have been denied a timely hearing on his suspension by the Tennessee Board of Professional Responsibility (BPR) and that individual members of the BPR acted based on anticompetitive animus. Manookian's federal constitutional and antitrust complaint alleged that certain Tennessee disciplinary rules were unconstitutional, and that damages caused by his suspension resulted from anticompetitive or unconstitutional conduct of the BPR members. Manookian's complaint was filed based in part on professional judgment that there were good-faith arguments that existing Sixth Circuit precedent prohibiting damages claims against members of the BPR, *see Moncier v. Jones* 557 Fed. Appx. 407, 409 (6th Cir. 2014) was either inapplicable or might be overruled in relevant respects.

The Middle District of Tennessee instead relied on existing Sixth Circuit

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

precedent, dismissed Manookian's damages claims against individual BPR members, and stayed Manookian's constitutional claims for injunctive and declaratory relief (which remain stayed to this day). Reaching the judgment that the District Court's partial ruling was not a final appealable judgment because certain claims had been stayed rather than ruled upon, Bona Law filed a Rule 54(b) motion for entry of judgment rather than a notice of appeal. When the Middle District of Tennessee did not rule on the Rule 54(b) motion after several months, Bona Law filed a notice of appeal a few days before the 180-day limit for appealing an order that does not contain a "separate document." Fed. R. App. P. 4(a)(7)(A)(ii). The Sixth Circuit ultimately disagreed with Bona Law's reasoning and dismissed Manookian's appeal as untimely. Manookian chose not to seek en banc Sixth Circuit or U.S. Supreme Court review.

Manookian now attempts to blame Bona Law for damages he suffered from his suspension. He asserts that Bona Law acted below the standard of care when it exercised its professional judgment to file a Rule 54(b) motion rather than file a notice of appeal within thirty days of the Middle District of Tennessee order granting the BPR members' motion to dismiss.  Manookian is wrong.  He lost any realistic chance of prevailing on his damages claims against individual BPR officials when he continued to violate Tennessee Rules of Professional Conduct.

To survive a pleading-based challenge, Manookian must adequately allege that, but for Bona Law's decision to pursue Rule 54(b) relief from the Middle District of Tennessee rather than file a notice of appeal within thirty days of the granting of the BPR members' motion to dismiss, Manookian would have recovered damages against the individual BPR members.  In other words, Manookian needs to establish that Bona Law's actions are responsible for the failure of the underlying litigation. Manookian cannot do so because the Tennessee Supreme Court—in parallel proceedings in which Manookian was represented by Tennessee counsel (not Bona Law)—found that the state-proceeding evidentiary record, which included his

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

original and post-federal-suit conduct, demonstrated that Manookian posed a "threat of substantial harm" to the public.

Manookian's complaint in this Court ignores that any prospect of prevailing on his damages claims against BPR members was rendered hopeless on appeal (or upon any potential remand) due to his own post-federal-complaint conduct and the post-federal-complaint findings of the Tennessee Supreme Court. The Tennessee Supreme Court's findings establish that the BPR's actions were motivated solely by Manookian's repeated violations of the Code of Professional Conduct. This finding foreclosed any chance that Manookian could (a) establish that the BPR's actions were motivated by some anticompetitive animus, necessary to his antitrust claim, and (b) convince the Sixth Circuit to reverse prior precedent prohibiting damages against individual BPR members. *Moncier,* 557 Fed. App'x. at 409.

Additionally, if Manookian wished to keep his federal constitutional challenges alive, he should have sought review of the Tennessee Supreme Court's ruling in the United States Supreme Court – because no other federal court could have reviewed the Tennessee Supreme Court's ruling. Manookian's Tennessee counsel did not seek U.S. Supreme Court review, however, very likely rendering Manookian's federal damages claims dead under claim and issue preclusion principles before Bona Law could have tried to save them in the Sixth Circuit.[1]

This Court should dismiss Manookian's complaint in its entirety because Manookian is unable to state facts sufficient to constitute a claim for malpractice or breach of fiduciary duty as a matter of law.

---

[1] It bears emphasis that the state-court and federal-court matters were proceeding simultaneously, and the Tennessee Supreme Court ruling was issued first (in October 2019). Manookian had Tennessee counsel, not Bona Law, representing him in the disciplinary proceedings—including the Tennessee Supreme Court proceeding.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## II.   STATEMENT OF PERTINENT FACTS

### A.   The BPR Files a Petition for Discipline Against Manookian

On December 18, 2017, BPR filed a petition for discipline, case number 2017-2805-5-WM, against Manookian (not then represented by Bona Law), and supplemented its petition on March 22, 2018, adding additional grounds to support suspending Manookian from the practice of law.  Request for Judicial Notice, "RJN," Exh. 1[2].  It sought discipline for Manookian's improper taking of a default of opposing counsel in a separate matter, and for an email Manookian sent opposing counsel threatening the livelihood of opposing counsel's daughter:

> [Opposing counsel's name],
>
> I hear [attorney's daughter] is working at [name of company]. What a fantastic opportunity; particularly given her history of academic failure and alcohol and substance abuse.
>
> I happen to have some very close friends at [name of company].
>
> I will make it a point to see what I can do regarding her prospects there. I am reminded that it is good for us to keep apprised of each other's lives and the things we can do to influence them.

RJN, Exh. 3, pp. 4-5,

The above-referenced discipline petitions were pending when, on September 19, 2018, BPR petitioned the Tennessee Supreme Court to immediately suspend Manookian from the practice of law under Tennessee Rule of Professional Conduct 9, § 12.3.  RJN, Exh. 1.

### B.   The Tennessee Supreme Court Temporarily Suspends Manookian

On September 21, 2018, the Tennessee Supreme Court entered a per curiam order based on the BPR's September ex parte petition finding Manookian to be a threat of substantial harm to the public. RJN, Exh. 2. The Tennessee Supreme

---

[2] The facts are based on matters referenced in the Complaint and materials of which judicial notice is proper.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Court's order precluded Manookian from accepting new cases and ordered

2  Manookian to cease representing existing clients by October 21, 2018.  *Id.*

3      Manookian (not represented by Bona Law), sought to dissolve and amend the

4  Tennessee Supreme Court's order. The Tennessee Supreme Court responded by

5  requiring the BPR to file another declaration supporting its request that Manookian

6  be suspended, and it stayed enforcement of its order as it related to existing clients

7  pending further orders. RJN, Exh. 3, p. 1. On November 21, 2018, the Tennessee

8  Supreme Court approved the BPR's report and recommendation and it was published

9  on the Tennessee State Bar website. RJN Exh. 3. It ordered that Manookian be

10  suspended and dissolved the stay it had issued relating to existing clients.

11      The BPR prepared a report recommending that Manookian remain suspended.

12  RJN, Exh. 3.  The BPR reported:

13          Mr. Manookian has not acknowledged that there is anything
            wrong with his conduct. Consequently, he has taken no steps
14          to assure the panel that the conduct will not be repeated. He
            did not indicate that he intends to take any steps to address
15          what he considers to be minimally inappropriate behavior –
            admittedly rude and insulting but, according to Mr.
16          Manookian, not threatening to the public or to the judicial
            system which serves the public.
17

18  RJN, Exh. 3, p. 12.

19      On February 27, 2019, the Tennessee Supreme Court denied Manookian's

20  petition for dissolution of his temporary suspension that he had filed in January 2019.

21  RJN, Exh. 4. Manookian filed a second petition for dissolution of order of temporary

22  suspension on April 9, 2019, which was granted by the Tennessee Supreme Court on

23  May 17, 2019.  RJN, Exh. 5.

24      **C.   Manookian Hires Bona Law to File Suit Against BPR Members**

25      Manookian hired Bona Law on March 20, 2019, to provide legal services in

26  connection with his dispute against the individual BPR members whom he viewed as

27  responsible for his suspension ("BPR defendants"). RJN, Exh. 8.  Bona Law

28  prepared an antitrust and constitutional complaint alleging, among other things, that

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-8115-3262.1                9                Case No. 21CV0562 WQH BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

the BPR had unlawfully conspired to exclude him from the market for plaintiff-side medical malpractice representation for competitive reasons, thereby causing damages to Manookian in the form of lost income, as well as additional reputational damage. RJN, Exh. 8.[3]

Bona Law field Manookian's federal complaint on April 12, 2019, alleging four claims for relief:

(1) FIRST CLAIM: 42 U.S.C. § 1983 – First Amendment Violation. Manookian's first claim for relief asserted that Manookian was being disciplined for exercising his first amendment rights.

(2) SECOND CLAIM: 42 U.S.C. § 1983 – Due Process Violation. Manookian's second claim sought a declaration that Tennessee Supreme Court Rule 9, § 12.3 (which Manookian alleged was used to suspend Manookian without a formal hearing), was unconstitutional on its face and as applied.

(3) THIRD CLAIM: 42 U.S.C. § 1983 – Equal Protection Violation. Manookian's third claim sought a declaration that Manookian's suspension violated his rights to equal protection of the law.

(4) FOURTH CLAIM: 15 U.S.C. § 1 – Conspiracy to Restrain Trade. Manookian's fourth claim sought damages under the Sherman Act, on the basis that Manookian was being excluded from the market by members of the BPR for competitive reasons.

The federal complaint requested equitable relief declaring Tennessee Supreme Court Rule 9, § 12.3 unconstitutional and enjoining its enforcement. It sought a dissolution of Manookian's suspension and an award of money damages under 15 U.S.C. § 15 and 42 U.S.C. § 1988. The federal complaint pleaded that certain immunities did not apply because the BPR defendants—and not the Tennessee

---

[3] Bona Law did not represent Manookian in any of his proceedings before the BPR or in the Tennessee Supreme Court; Bona Law's role was limited to seeking relief against the BPR defendants in federal court.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Supreme Court—were responsible for Manookian's suspension. RJN, Exh. 8.

2  **D.      The Tennessee Supreme Court Dissolves Manookian's Suspension**

3  ***After* Bona Law Files Suit; Manookian Violates His Ethical**

4  **Obligations Again**

5        After Bona Law filed Manookian's complaint against BPR members on

6  April 29, 2019, the BPR submitted a report in response to Manookian's April 9, 2019

7  petition recommending that Manookian's suspension be dissolved subject to

8  specified conditions. RJN, Exh. 1. On May 17, 2019, the Tennessee Supreme Court

9  approved the BPR's order and dissolved Manookian's suspension, so long as he

10 complied with the conditions set forth by the BPR.  RJN, Exh. 1.  Manookian would

11 have been able to continue to represent existing clients and take on new clients had

12 he complied with the Tennessee Supreme Court's order. But on May 24, 2019, just

13 seven days after the suspension was dissolved, the BPR presented a second

14 supplemental petition for discipline against Manookian seeking to reinstate his

15 suspension for new violations of the Rules of Professional Conduct.  RJN, Exh. 1.

16       On October 11, 2019, the Tennessee Supreme Court suspended Manookian

17 based on the BPR's second supplemental petition for temporary suspension under

18 Tennessee Supreme Court Rule 9, section 12.3. RJN, Exh. 6, p. 3.  The Tennessee

19 Supreme Court found Manookian to pose a threat of substantial harm to the public

20 based on a BPR report and recommendation, which outlined ***two new incidents***

21 reflecting on Manookian's inability to practice law consistent with ethical standards.

22 "In the first incident, the Panel found that Manookian improperly communicated

23 directly with the client of opposing counsel by sending an email designed to

24 intimidate the client and undermine the client's relationship with the client's

25 attorney." RJN, Exh. 6, p. 3. The court cited a second incident in which Manookian

26 sent opposing counsel an email containing confidential information and attaching a

27 photograph of his wife and home causing counsel to fear for the safety of his family.

28 *Id.*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Manookian, through local Tennessee counsel, filed a petition for dissolution of his temporary suspension. On October 17, 2019, the Tennessee Supreme Court denied Manookian's petition. RJN, Exh. 7. It explained that Manookian had already obtained several hearings on the temporary suspension of his license. *Id*. It described how Manookian's suspension had been lifted subject to conditions that Manookian subsequently violated:

> Mr. Manookian received multiple hearings in connection with the original temporary suspension, was granted reinstatement with conditions, and received a formal evidentiary hearing in advance of reinstatement of the temporary suspension of his law license. The most recent hearing demonstrated ample basis for determining that Mr. Manookian poses a threat of substantial harm to the public and for reinstatement of his temporary suspension. Therefore, Mr. Manookian's petition for dissolution is summarily DENIED.
>
> Mr. Manookian shall remain temporarily suspended from the practice of law as provided in Tenn. Sup. Ct. R. 9, § 12.3. Mr. Manookian shall comply with Tenn. Sup. Ct. R. 9 in all respects and particularly as provided in Tenn. Sup. Ct. R. 9, § 28.
>
> Both Mr. Manookian and the Board shall proceed with all due speed toward ultimate resolution of the petition for discipline currently pending before the Board.

*Id*., p. 2.

Thus, *after* Bona Law filed suit on Manookian's behalf, the Tennessee Supreme Court made findings on Manookian's original conduct and his new, post-suit conduct, that Manookian represented a substantial harm to the public. That conduct—and nothing else—prevented and prevents Manookian from practicing law in Tennessee.

### E.   The BPR Defendants Move to Dismiss Manookian's Complaint

Meanwhile, the BPR defendants moved to dismiss Manookian's federal complaint on June 11, 2019. RJN, Exh. 17. The BPR defendants argued that they were immune from antitrust damages under the state-action exemption recognized in *Parker v. Brown*, 317 U.S. 341 (1943), as it was not the BPR defendants, but the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-8115-3262.1                                        12                          Case No. 21CV0562 WQH BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1  Tennessee Supreme Court that suspended Manookian, and therefore they were
2  immune from liability. The BPR defendants also asked the District Court to abstain
3  from ruling on Manookian's claims seeking injunctive relief under *Younger v.*
4  *Harris*, 401 U.S. 37 (1971), as those could be presented to the Tennessee Supreme
5  Court, and made other immunity arguments.

6      Bona Law opposed the motion to dismiss, arguing that Manookian pled facts
7  showing that individual BPR defendants were responsible for Manookian's
8  suspension, rendering the immunity arguments inapplicable. Bona Law argued that
9  the court should not abstain from ruling on Manookian's equitable and antitrust
10  claims because: (a) federal courts have exclusive jurisdiction to hear antitrust claims;
11  (b) BPR members were financially biased and could not give Manookian a fair
12  hearing on his constitutional claims; and (c) the proceedings in which Manookian
13  had been temporarily suspended were no longer pending because of the Tennessee
14  Supreme Court's May 2019 dissolution order. RJN, Exh. 10

15      **F.**    **The District Court Dismisses Manookian's Claims for Money**
16          **Damages and Stays His Request for Equitable Relief**

17      On February 28, 2020, the District Court dismissed Manookian's money
18  damage claims. RJN, Exh. 11. It found that BPR members could not be sued in their
19  individual capacities because Manookian was suspended by the Tennessee Supreme
20  Court and not BPR defendants. RJN, No. 11. It also held BPR defendants were
21  immune under a quasi-judicial immunity theory. RJN, Exh. 11 (Mem. at p. 8.)

22      The District Court held that Tennessee maintains an important interest in
23  regulating the practice of law, and Manookian maintained an adequate opportunity to
24  raise constitutional challenges in the underlying Tennessee state proceeding. It
25  rejected Manookian's bias arguments, which were foundational to both the antitrust
26  and constitutional damages claims, because the ultimate arbiter of Manookian's
27  suspension was the Tennessee Supreme Court. The court entered the following order
28  dismissing four claims with prejudice and staying the remaining claims:

1
2
3
4
5
6

> Defendants' Motion to Dismiss is GRANTED, in part. Plaintiff's antitrust claim in Count IV is subject to Parker immunity and is DISMISSED WITH PREJUDICE. The claims for damages against Defendants under 42 U.S.C. § 1983 in Counts I, II, and III are barred by quasi-judicial immunity and are DISMISSED WITH PREJUDICE. The remaining claims for injunctive and declaratory relief are STAYED pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). In light of the ruling on Defendants' Motion to Dismiss, Plaintiff's Motion for Preliminary Injunction is MOO

7   RJN, Exh. 11.

8   **G.    Bona Law Files a Motion for Judgment Pursuant to FRCP 54(b),**
9        **Based on the District Court's Ruling**

10   In response to the February 28, 2020 order, Bona Law and Tennessee local
11   counsel made the strategic decision to file a motion for separate judgment under
12   Federal Rule of Civil Procedure Rule 54(b) rather than a notice of appeal. Bona filed
13   the Rule 54(b) motion on March 30, 2020, <u>within the statutory deadline to appeal the</u>
14   <u>District Court's ruling</u>. RJN, Exh. 13. Bona Law explained that the court had not
15   entered final judgment because it adjudicated "fewer than all claims" and asked the
16   District Court to enter a separate judgment as to the claims dismissed with prejudice
17   in the order. *Id*. Since the court had not expressly determined "there is no just reason
18   for delay" or directed entry of final judgment as to the claims that were adjudicated, a
19   Rule 54 motion, rather than an appeal, was the appropriate filing. *See In re Fifth*
20   *Third Early Access Cash Advance Litig.* 925 F.3d 265, 275; *Summers v. Leis,* 368
21   F.3d 881, 889 (6th Cir. 2004).

22   The District Court did not rule on Bona Law's Rule 54(b) motion for judgment
23   within 150 days (Fed. R. App. Proc. Rule 4(a)(7)(A)(ii)). Therefore, on August 24,
24   2020*,* Bona Law filed a notice of appeal to protect Manookian's right to appeal the
25   February 28, 2020 Order within 180 days. RJN, Exh. 16. The District Court then
26   ruled that the Rule 54(b) motion was moot given the filing of the protective notice of
27   appeal. RJN, No. 16.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-8115-3262.1                                    14                          Case No. 21CV0562 WQH BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

## H.   Manookian's Appeal is Dismissed

After Bona Law filed the notice of appeal, the Sixth Circuit ordered Manookian to show cause as to why his appeal should not be dismissed as untimely. RJN, Exh. 15. Bona Law submitted that the dismissal was actually appropriate, but not because of untimeliness, but because the District Court's order was not a final judgment as to all claims set out in a separate statement as required by Rule 58 and was thus not appealable. RJN, Exh. 15. Bona Law explained that the order did not necessarily end the litigation on the merits and leave nothing for the court to do but execute the judgment. *Id.*, pp. 3-4. Bona Law argued, among other things, that if the state proceedings were to continue, as the District Court's ruling acknowledged, then Manookian could still pursue his constitutional claims in federal court if he prevailed in the state-court proceedings.

The Sixth Circuit disagreed. It held on January 5, 2021, that Manookian's constitutional challenges could be asserted in the ongoing Tennessee state court proceedings and that Manookian would therefore be precluded from litigating those same challenges in the District Court, and that the District Court's stay was "effectively a final decision and . . . the district court order is final for purposes of appellate review." RJN, Exh. 16. The Sixth Circuit ignored the possibility raised by Bona Law that Manookian might prevail on the merits of his defense to the BPR's claims in the Tennessee Supreme Court such that The Tennessee Supreme Court would not need to rule on his constitutional challenges. Were that the case, then the equitable and constitutional claims asserted before the District Court would survive and Manookian would be entitled to a ruling in federal District Court as to whether the Tennessee Supreme Court Rules violate his First Amendment rights.

In the meantime, Bona Law had filed a motion on December 8, 2020, to withdraw as Manookian's counsel of record in the federal District Court.  RJN, Exh. 17.  The Court granted Bona Law's motion on December 9, 2020, and Bona Law's representation of Manookian in the District Court ended. David Horowitz,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Manookian's Tennessee counsel remained as Manookian's counsel of record in the
2  District Court. *Id.*

3        After the Sixth Circuit ruling, Manookian could have still sought review of the
4  Sixth Circuit's decision by filing a petition for en banc rehearing from the order. He
5  elected not to do so. Additionally, Manookian could have filed a petition for writ of
6  certiorari in the U.S. Supreme Court. Manookian elected not to do that either.

7        **I.      Meanwhile, the BPR Had Sought Additional Discipline Against**
8                 **Manookian**

9        On August 6, 2020, BPR filed a third supplemental petition for discipline
10  against Manookian. That petition is still pending. Manookian has not challenged any
11  ruling from the Tennessee Supreme Court in the United States Supreme Court and is
12  still suspended from practicing law in Tennessee. RJN, Exh. 1.

13       **J.      Manookian's Legal Malpractice Complaint**

14       Manookian filed his complaint for legal malpractice and breach of fiduciary
15  duty in this Court claiming Bona Law committed malpractice because it allegedly
16  failed timely to appeal the February 28, 2020, order of the Middle District of
17  Tennessee. RJN, Exh. 9. The complaint alleges that Bona Law negligently advised
18  him that the order was not immediately appealable. *Id*. Manookian asserts that the
19  order was in fact immediately appealable and that Bona Law's failure to appeal the
20  decision cost him the ability to litigate his claims for damages under the antitrust
21  laws and section 1983, (even though he failed to exhaust his remedies through en
22  banc rehearing or a petition for writ of certiorari). *Id*. Manookian does not—and
23  cannot—argue that he (and not Bona Law) lost his right to challenge the merits of the
24  Tennessee Supreme Court's order. He does not and cannot argue that he lost his right
25  to pursue his claims for equitable relief as those continue to exist. And he does not
26  and cannot argue that he had any reasonable expectation that his federal claims
27  would result in a damages award in his favor, given the Tennessee Supreme Court's
28  ruling that it was Mr. Manookian's unprofessional conduct and nothing else that lead

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  to his suspensions.

2  **III.    LEGAL STANDARD FOR A MOTION TO DISMISS**

3       Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a

4  cognizable legal theory or sufficient facts to support a cognizable legal theory. *See*

5  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a

6  claim to relief and survive a Rule 12(b)(6) motion, the "[f]actual allegations must be

7  enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

8  *Twombly*, 550 U.S. 544, 555 (2007). The allegations must be "more than labels and

9  conclusions, and a formulaic recitation of the elements of a cause of action will not

10  do." *Id*. (citing Fed. R. Civ. P. 8(a)(2)).

11       Although the Court must accept as true all "well-pleaded factual allegations,"

12  *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009), it is not "required to accept as true

13  allegations that are merely conclusory, unwarranted deductions of fact, or

14  unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th

15  Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-

16  conclusory factual content, and reasonable inferences from that content, must be

17  plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret*

18  *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

19       Additionally, the Court may look beyond the complaint and consider

20  "documents whose contents are alleged in a complaint and whose authenticity no

21  party questions," even when those documents "are not physically attached to the

22  plaintiff's pleading." *Parrino v. FHP, Inc*., 146 F.3d 699, 705-06 (9th Cir. 1998)

23  (quotation omitted). The same is true of documents "upon which the plaintiff's

24  complaint necessarily relies." *Id*. at 706.[4]

25

26

---

27  [4] This Court should take judicial notice of records from the underlying actions and
proceedings as part of its ruling. Those records cannot be questioned. Fed. R. Evid.
28  201.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## IV. THIS COURT SHOULD DISMISS MANOOKIAN'S CLAIM BECAUSE BONA LAW AND ITS ATTORNEYS EXERCISED PROFESSIONAL JUDGMENT AND ARE IMMUNE FROM ALLEGATIONS THAT THEY BREACHED THE STANDARD OF CARE

Manookian cannot state a claim for legal malpractice because Bona Law and its attorneys did not breach any standard of care as a matter of law and are shielded from liability based on the doctrine of judgmental immunity. *Woodruff v. Tomlin*, 616 F.2d 924, 930 (6th Cir. 1980).

"When determining whether a lawyer breached a duty, the question becomes whether the lawyer failed to exercise the degree of care, skill, and diligence commonly possessed and exercised by other attorneys practicing in the same jurisdiction." *Horton v. Hughes*, 971 S.W.2d 957, 959 (Tenn. Ct. App. 1998). The judgmental immunity doctrine recognizes that an attorney is not liable for the honest exercise of professional judgment that results in an unfavorable outcome. This "sound rule" was recognized to be a part of Tennessee law by the Sixth Circuit in *Woodruff*, 616 F.2d at 934. Because "the general Tennessee rule [only] holds attorneys liable for losses to a client for failure to exercise reasonable skill and care," the Sixth Circuit reasoned this "can only mean that there can be no liability for acts and omissions by an attorney in the conduct of litigation which are based on an honest exercise of professional judgment." *Id.* at 930. "Otherwise, every losing litigant would be able to sue his attorney if he could find another attorney who was willing to second guess the decisions of the first attorney with the advantage of hindsight." *Id.* This immunity for the exercise of professional judgment, however, is not absolute: an attorney "is still bound to exercise a reasonable degree of skill and care in all his professional undertakings." *Id.*

All of Manookian's claims against Defendants presume—without basis or support— that Defendants negligently failed to appeal the District Court's February 28, 2020 order dismissing portions of his claims against individual BPR members.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-8115-3262.1
18
Case No. 21CV0562 WQH BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1   But Manookian's theory cannot survive because, as explained in the Rule 54(b)

2   motion, the District Court did not enter a final judgment on all of Manookian's

3   claims given the District Court's decision to stay Manookian's claims for equitable

4   relief. This was, as a matter of law, a reasonable position for Bona Law to take under

5   existing precedent. Manookian identifies no problem (now, or when the

6   determination was made) with the reasoning supporting Bona Law's conclusion; he

7   asserts only that it was problematic because he dislikes what resulted from it.

8         The Sixth Circuit's determination that an order dismissing some—but not

9   all—of Manookian's claims was a final judgment subject to appeal is in significant

10  tension with the general rule that, when appealing federal orders, all claims must be

11  raised in a single appeal after a judgment on the merits. Here, Manookian's claims

12  for equitable relief were *stayed* by the District Court and remained to be adjudicated

13  after the District Court dismissed only the damages claims. *Richardson-Merrell, Inc.*

14  *v. Koller*, 472 U.S. 424 (1985); *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S.

15  368, 374 (1981). Bona Law followed established precedent against "piecemeal

16  appeals" where issues remain to be adjudicated. *Huron Valley Hospital, Inc. v.*

17  *Pontiac,* 792 F.2d 563, 566 (6th Cir. 1986) ("The Supreme Court has frequently

18  recognized the extraordinary delay and expense which would occur if immediate

19  appeals were allowed from each and every order of the district court." Courts

20  "traditionally have not looked upon piecemeal appeals with any degree of favor.");

21  *Bankers Tr. Co. v. Mallis*, 435 U.S. 381, 386 (1978) (Rule 58 "should be interpreted

22  to prevent loss of the right of appeal, not to facilitate loss."); *Otis v. City of Chi.*, 29

23  F.3d 1159, 1163 (7th Cir. 1994) (en banc) ("Rule 58 is designed to produce a distinct

24  indication that the case is at an end.").

25        Moreover, had Bona Law filed an appeal within 30 days rather than file a

26  Rule 54(b) motion, Bona Law and Manookian would have been conceding that the

27  District Court's judgment was final while Manookian's state-court disciplinary

28  proceedings continued. In those proceedings, Manookian was making some of the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

same constitutional challenges that he had made in the federal-court litigation. Any concession by Bona Law and Manookian that the District Court's order was final would have meant, under principles of claim and issue preclusion, that Manookian's constitutional challenges could not proceed in state court.

While the Sixth Circuit ultimately disagreed with Bona Law's analysis regarding the timing of an appeal, the Sixth Circuit did not determine that the dismissal orders as to the money damages claims were separately appealable orders subject to the original statutory deadline. Instead, it took the unusual position that the entire judgment was *final*, including the stay order, and, in doing so, concluded that the Tennessee Supreme Court was the final—and sole—adjudicator of Manookian's federal constitutional claims. It asserted that the District Court's order staying Manookian's claims for equitable relief was final because it effectively put Manookian out of court, reasoning that Manookian's state court proceedings would necessarily operate as res judicata and end the federal litigation. *See, e.g.*, *RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 556 (6th Cir. 2013). But Bona Law had highlighted the problem with such reasoning in its response to the order to show cause by explaining that there remained a strong possibility that the Tennessee Supreme Court would rule on the merits of Manookian's defense to the BPR's claims and dissolve his suspension. Were the Tennessee Supreme Court to have done so, that court could have left some or all of Manookian's constitutional challenges raised in the District Court unadjudicated. In ruling against Manookian, the Sixth Circuit did not even *mention* any of Bona Law's arguments on that point. RJN, Exh. 15, pp. 3-4.

The record demonstrates that Bona Law exercised professional judgment in concluding that a Rule 54(b) motion was appropriate to obtain a final, appealable District Court order, and Defendants cannot, as a matter of law, be liable for malpractice. In choosing to file a Rule 54(b) motion, Bona Law avoided the risk that filing a direct immediate appeal would create the possibility of res judicata of active

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  constitutional claims in state court by implicitly admitting that the federal District
2  Court's decision was final as to all claims (which is a necessary premise for a direct
3  appeal). Bona Law's strategic decision allowed the state-court case to continue. *See,*
4  *e.g.*, *Hyland v. Liberty Mut. Fire Ins. Co.,* 885 F.3d 482 (7th. Cir. 2018).

5      Bona Law also exercised sound professional judgment when it argued that the
6  form of the District Court's order rendered it not appealable as a final judgment
7  because it was not stated in a separate document, as that term has been interpreted by
8  relevant case law, thereby triggering the 180-day time limit that applies to orders that
9  are not set forth in a separate statement. For an order to constitute a separate
10 statement under Federal Rule Civil Procedure Rule 58's requirements, it "should be
11 as minimal as possible," which is not the case with the District Court's longer order
12 that addresses five different filings and recites the procedural history of the case. See,
13 e.g., *Hyland*, 885 F.3d at 484.

14     All of the above disproves any suggestion that Bona Law simply missed a
15 deadline or failed to exercise sound judgment in determining how to perfect
16 Manookian's appeal. A central purpose of the judgmental immunity doctrine is to
17 preclude after-the-fact assessment of an attorney's judgment based solely on the
18 outcome of that judgment. Monday-morning quarterbacking—such as what
19 Manookian here seeks—unfairly holds attorneys responsible for the actions of courts
20 and other entities beyond their control.

21 **V.   THE COMPLAINT MUST BE DISMISSED BECAUSE MANOOKIAN**
22 **CANNOT PROVE THAT BONA LAW CAUSED HIS DAMAGES.**

23 **A.   Manookian Cannot Prove that He Would Have Recovered Damages**
24 **Against Individual BPR Members**

25     This Court must dismiss Manookian's claims for the separate and independent
26 reason that he could not have and would not have recovered any damages in the
27 underlying lawsuit. To survive this motion to dismiss, Manookian's claims against
28 Bona Law require allegations plausibly suggesting he would have prevailed in the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  underlying appeal and antitrust claim but for the alleged error. He does not include

2  such allegations and, as explained below, he cannot include them as a matter of law

3  because the Tennessee Supreme Court independently determined he posed a threat of

4  substantial harm to the public.

5          To state a claim for legal malpractice under Tennessee law, a plaintiff must

6  show (1) the defendants owed a duty to plaintiff, (2) they breached that duty,

7  (3) plaintiff suffered damages, (4) the breach in fact caused plaintiff's damages, and

8  (5) the breach proximately, or legally, caused plaintiff's damages. *Gibson v. Trant*,

9  58 S.W.3d 103, 108 (Tenn. 2001)[5] (citing *Lazy Seven Coal Sales, Inc. v. Stone &*

10  *Hinds*, 813 S.W.2d 400, 403 (Tenn.1991)).

11         To prove that attorney negligence caused damages, "a plaintiff must prove that

12  he would have obtained relief in the underlying lawsuit, but for the attorney's

13  malpractice; consequently, the trial of a legal malpractice claim becomes, in effect, a

14  'trial within a trial.'" *Shearon v. Seaman*, 198 S.W.3d 209, 214 (Tenn. Ct. App.

15  2005). When there is an appeal, "plaintiffs must demonstrate that the appeal of the

16  underlying litigation would have been successful, and that upon trial after remand

17  they would have obtained a recovery." *Id.* Under this standard, the trier of fact views

18  the underlying suit from the standpoint of what a reasonable judge or jury would

19  have decided but for the attorney's alleged negligence. *See Powell v. Potterfield*,

20  2014 WL 2582765, at *3 (S.C. Ct. App. March 19, 2014) (case within a case

21  determination is "based on an objective standard, i.e., what the outcome should have

22  been"); *Kranendonk v. Gregory & Swapp, PLLC*, 320 P.3d 689, 696 (Utah Ct. App.

23  2014).  The question is not what the outcome would have been given a particular

24

25  [5]  Defendants do not perceive any material difference between California and
    Tennessee law as it relates to a claim for legal malpractice, However, if a difference
26  exists Tennessee law governs. *See Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th
    906, 919-20, (Cal. 2001). All of the conduct at issue occurred in connection with an
27  underlying lawsuit litigated in Tennessee. Tennessee courts have the stronger interest
    in regulating the practice of law within their courts. California has little—if any—
28  interest in the outcome of a federal lawsuit against a California attorney who
    voluntarily conducted business in Tennessee. *Waggoner v. Snow, Becker, Kroll, Klaris*
    *& Krauss*, 991 F.2d 1501, 1506 (9th Cir. 1993)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

judge, but rather what it should have been. *Id.*

To prevail on his antitrust claim as a private plaintiff, Manookian <u>must</u> show he suffered antitrust injury, which is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful" under the antitrust laws. *Atl. Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328, 334 (1990). In other words, to prevail on his antitrust claim, Manookian bore the burden of showing that his injury flowed from the defendants' violation of the antitrust laws and not from some other source—including, for example, his violation of the Rules of Professional Responsibility. *See HyPoint Technology, Inc. v. Hewlett-Packard Co.* (6th Cir. 1991), 949 F.2d 874, 877; *Nw. Publications, Inc. v. Crumb* (9th Cir. 1985), 752 F.2d 473, 476 ("It is generally sufficient to show with reasonable probability some causal connection between the antitrust violation and a loss of income.")

Manookian's injury did not flow from the BPR defendants' conduct at all, lawful or unlawful, but rather from his own conduct interacting with the decision of the Tennessee Supreme Court. Demonstrating the requisite antitrust injury became impossible when the Tennessee Supreme Court repeatedly affirmed that Manookian's original conduct—and his conduct after the filing of the antitrust complaint and not a subject of the complaint—represented a threat of substantial harm to the public. On October 11, 2019, the Tennessee Supreme Court determined that Manookian's conduct violated the Rules of Professional Conduct in several ways beyond the original offenses on which he based his antitrust claims against the BPR officials in their individual capacity.  It highlighted two incidents, one in which Mr. Manookian improperly communicated with a client of opposing counsel by email such that it was "designed to intimidate the client and undermine his relationship with the attorney," and a separate incident in which he intentionally sent another opposing counsel an email that contained a picture of his wife and other personal information causing opposing counsel to be fearful for the safety of his family.  RJN,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   Exh. 7, p. 3.

2      Shortly thereafter, in its order filed October 17, 2019 denying Manookian's

3   petition to dissolve his suspension, the Tennessee Supreme Court made the following

4   determinations:

5         Mr. Manookian received multiple hearings in connection with the
          original temporary suspension, was granted reinstatement with
6         conditions, and received a formal evidentiary hearing in advance of
          reinstatement of the temporary suspension of his law license. **The most**
7         **recent hearing demonstrated ample basis for determining that Mr.**
          **Manookian poses a threat of substantial harm to the public and for**
8         **reinstatement of his temporary suspension.**

9

10        RJN, Exh. 7 at p. 2 (emphasis added).

11     As he was suspended from practicing law in Tennessee for distinct reasons

12  unrelated to the allegedly anticompetitive conduct as determined by the Tennessee

13  Supreme Court, Manookian can no longer claim that his injury "was of the type the

14  antitrust laws were intended to prevent and that flow[ed] from that which makes

15  defendants' acts unlawful." *ARCO*, 495 U.S. at 334.[6]  In the circumstances of the

16  underlying case, including the relevant post-complaint actions by the Tennessee

17  Supreme Court and Manookian himself, the Sixth Circuit would likely have affirmed

18  the federal trial court's motion to dismiss. Bona Law, faced with such a certainty, did

19  what it could do to save the injunctive and equitable claims and any possibility of

20  leverage for settlement from the federal action.[7]

21  _____

22  [6] There were additional significant hurdles to Manookian's underlying antitrust claims
    resulting from both post-filing actions and the inherent difficulty with the underlying
23  antitrust claim itself.

24
    [7] An award of damages against individual BPR members required Bona Law to
25  persuade the Sixth Circuit to reverse prior precedent. *Moncier,* 557 Fed. Appx. at 409.
    While this was an uphill battle at the time the complaint was filed, it became even
26  more problematic once the Tennessee Supreme Court concluded that Manookian's
    repeated suspensions were caused not by any misconduct by BPR members, but rather
27  by Manookian's repeated misconduct. Convincing the Sixth Circuit to rethink
    (footnote continued)
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-8113-3262.1                                24                    Case No. 21CV0562 WQH BLM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

**B.      Sound Public Policy Prevents Manookian from Asserting His Damages Claims**

Manookian's malpractice claim is not significantly different from that of a guilty criminal defendant alleging malpractice against his lawyer, which requires a showing of actual innocence. *Zonge v. Woodall*, No. M1998-00800-COA-R3-CV, 2000 Tenn. App. LEXIS 681, at *24-26 (Ct. App. Oct. 5, 2000).  Manookian retained Bona Law to allege section 1983 and antitrust claims against BPR members. Bona Law had no control over Manookian's original conduct—or his subsequent actions that led to his subsequent suspension. If Manookian could recover against Bona Law for damages suffered from his suspension, even though he was suspended for good reason, then he would be indirectly benefiting from his repeated violations of the Rules of Professional Conduct.  *Zonge,* at 24-26.

**C.      Manookian Cannot Establish Causation Because His Federal Constitutional Challenges to Tennessee Supreme Court Rule 12.3 Are Barred by Claim Preclusion**

To avoid dismissal, Manookian must adequately allege that, but for Bona Law's decision to pursue Rule 54(b) relief from the Middle District of Tennessee rather than file a notice of appeal within thirty days of the granting of the BPR members' motion to dismiss, Manookian would have recovered damages against the individual BPR members. Manookian cannot so allege, however, because Manookian raised his federal constitutional arguments regarding Tennessee's Rules of Professional Conduct (or could have raised any such challenges) and the Tennessee Supreme Court determined based on state-law grounds that Manookian's suspension was justified. If Manookian wished to keep those federal constitutional challenges alive, he should have sought review of the Tennessee Supreme Court's ruling in the United States Supreme Court because no other federal court could have

precedent in this post-complaint factual context became an unwinnable endeavor.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  reviewed the Tennessee Supreme Court's ruling. 28 U.S.C. § 1257; *Pierce County v.*
2  *Guillen*, 537 U.S. 129, 141 (2003).

3        Manookian's failure—through his Tennessee counsel—to seek U.S. Supreme
4  Court review, rendered his federal damages claims (and even declaratory and
5  injunctive claims, according to the Sixth Circuit), precluded in federal District Court
6  by claim and issue preclusion. Irrespective of Bona Law's actions in the federal
7  antitrust case, Manookian would not have been able to pursue the claims[8].

8  **V.    MANOOKIAN FAILS TO STATE FACTS SUFFICIENT TO SET**
9          **FORTH A CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY**

10       Manookian's claim for breach of fiduciary duty fails as a matter of law
11  because he pleads no facts to show that a fiduciary duty was breached. Instead, he
12  merely repeats the claims asserted in his negligence cause of action, which alleges in
13  conclusory fashion that Bona Law breached a "reasonable duty" of care. *Sammons v.*
14  *Rotroff*, 653 S.W.2d 740, 745 (Tenn. Ct. App. 1983). He does not and cannot point to
15  any specific conduct that constitutes a breach, and he does not identify why any
16  alternative course would have been more reasonable under the circumstances and
17  when it could have been taken.  There is "no Tennessee case recognizing . . . [a]
18  cause of action [based on breach of fiduciary duty] against a lawyer for conduct
19  based exclusively on an alleged violation of the Code of Professional
20  Responsibility." *Image Outdoor Adver., Inc. v. CSX Transp., Inc.*, No. M2000-
21  03207-COA-R3-CV, 2003 Tenn. App. LEXIS 431, 2003 WL 21338700, at *10
22  (Tenn. Ct. App. June 10, 2003)  (unpublished); *see also Akins v. Edmondson*, 207
23  S.W.3d 300, 307-08 (Tenn. Ct. App. 2006); *CenTra, Inc. v. Estrin*, 538 F.3d 402,
24

25  _____
26  [8] It is likely that issue preclusion would have made it impossible for Manookian's
    antitrust claim to survive because the Tennessee Supreme Court issued a final
27  judgment contradicting Manookian's claims (necessary to his antitrust case) that the
    board member's actions against Manookian were a sham done for marketplace
28  competitive reasons

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

410 n.2 (6th Cir. 2008) ("Just as Michigan courts have done, lower Tennessee courts have rejected claims whose sole basis is a violation of the Rules of Professional Responsibility.").

Here, because Tennessee law does not recognize a separate and distinct breach of fiduciary claim when the claim is entirely premised on legal negligence allegations, Manookian's breach of fiduciary claim cannot stand.

## VI.   THE COMPLAINT FAILS TO SUFFICIENTLY ALLEGE CLAIMS AGAINST LUIS BLANQUEZ AND LUKE HASSKAMP

Manookian's complaint alleges claims against Mr. Blanquez, and Mr. Hasskamp[9] but asserts no specific facts against them. Indeed, their only mention occurs in the caption and in a paragraph defining "Defendants." *See* Dkt. 1 ¶¶ 10-12. Manookian makes no effort to establish how these defendants (i) breached the applicable standard of care or (ii) directly and proximately caused him damage. For example, he does not allege that these individuals signed any operative pleadings, filed notices of appearance, or were in any way involved with the specific matters about which he complains.

Manookian bears the burden of identifying specific facts concerning each defendant that suggest a claim to relief as to each. *See Esposito v. Hollander*, No. 2:09-cv-728-FtM-29SPC, 2011 U.S. Dist. LEXIS 9790, at *4 (M.D. Fla. Feb. 1, 2011) ("Additionally, although individuals are named as defendants, no specific actions are attributed to each of the defendants separately such that defendants would have sufficient notice of the allegations in the Second Amended Complaint."); *Bush v. Chancery Court*, No. 18-5215, 2018 U.S. App. LEXIS 30239, at *3 (6th Cir. Oct. 25, 2018) ("Bush claimed that certain defendants breached their fiduciary duties. Yet he failed to plead facts supporting those claims."). Manookian does not allege ***any*** facts about Mr. Blanquez or Mr. Hasskamp, much less any facts from which the

---

[9] The complaint also misspells Mr. Hasskamp's name.

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

1  Court could infer liability.

2  **VII.**   **CONCLUSION**

3      Defendants respectfully request that the Court grant their motion to dismiss

4  with prejudice for the reasons set forth above.

5  DATED: June 14, 2021           LEWIS BRISBOIS BISGAARD & SMITH LLP

6

7                            By:       */s/ Brian Slome*

8                                  Brian Slome

9                                  Kenneth C. Feldman

10   Attorneys for Defendants, Bona Law P.C., Jarod Bona, David Codell, Aaron Gott, Luke Hasskamp, And Luis Blanquez

# CERTIFICATION OF ELECTRONIC SERVICE

*Manookian v. Bona Law, et al.*
USDC, Southern District Case No. 21CV0562 WQH BLM

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 550 West C Street, Suite 1700, San Diego, CA 92101. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On June 14, 2021, I served the following document(s):

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

| | |
|---|---|
| Frank J. Johnson, Esq.<br>FrankJ@johnsonfistel.com<br>Kristen O'Connor, Esq.<br>KristenO@johnsonfistel.com<br>JOHNSON FISTEL, LLP<br>655 West Broadway, Suite 1400<br>San Diego, CA 92101<br>Telephone: (619) 230-0063<br>Facsimile: (619) 255-1856<br><br>*Local Counsel for Plaintiff* | John Spragens, Esq.<br>john@spragenslaw.com<br>SPRAGENS LAW PLC<br>311 22nd Ave. No.<br>Nashville, TN 37203<br>Telephone: (615) 983-8900<br>Facsimile: (615) 682-8533<br><br>*Lead Counsel for Plaintiff*<br><br>(Pro Hac Vice forthcoming) |

The documents were served by the following means:

☒ (BY COURT'S CM/ECF SYSTEM) Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on June 14, 2021, at San Diego, California.

_____
Jennifer Cannone

order.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW