JOHNSON FISTEL, LLP
Frank J. Johnson, Esq. (SBN 174882)
FrankJ@johnsonfistel.com
Kristen O'Connor, Esq. (SBN 305113)
KristenO@johnsonfistel.com
655 West Broadway, Suite 1400
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856

*Local Counsel for Plaintiff*

SPRAGENS LAW PLC
John Spragens, TN Bar No. 31455 (*Pro Hac Vice*)
john@spragenslaw.com
311 22nd Ave. No.
Nashville, TN 37203
Telephone: (615) 983-8900
Facsimile: (615) 682-8533

*Lead Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN P. MANOOKIAN,<br><br>Plaintiff,<br><br>v.<br><br>BONA LAW P.C., JAROD BONA, DAVID CODELL, AARON GOTT, LUKE HAASKAMP, AND LUIZ BLANQUEZ,<br><br>Defendants. | Case No.: 21CV0562 WQH BLM<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>**FED R. CIV. P. 12(b)(6)**<br><br>**Date: Sept 27, 2021**<br>**Hon. Judge William Q. Hayes**<br><br>**"NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT"** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................3

II.     FACTUAL BACKGROUND....................................................3

A.      The Bona Defendants Hold Themselves Out as Specialists in Antitrust and Appellate Law, Including the Appeal Timing Question at Issue in this Case .......3

B.      The Bona Defendants File Mr. Manookian's Antitrust Suit.......................5

C.      The District Court Dismisses the Antitrust Suit ..........................................6

D.      Mr. Manookian's Appeal Is Dismissed After the Bona Defendants Fail to Timely File Notice of Appeal................................................................................6

E.      The Bona Defendants Continue to Display Ignorance About Appellate Timing Rules.........................................................................................................7

III.    LEGAL STANDARD.............................................................7

IV.     THE BONA DEFENDANTS CANNOT RESOLVE DISPUTED ISSUES OF FACT AT THE PLEADING STAGE ..........................................................8

A.      The Complaint Plausibly Alleges that the Bona Defendants Breached Duties Owed to their Client.................................................................................8

B.      The Bona Defendants' *Post Hoc* Interpretation of Applicable Law is Both Self-Serving and Misguided..................................................................................9

C.      Whether the Bona Defendants Exercised Professional Judgment in Declining to Appeal Is the Central Dispute in this Case....................................11

D.      Well-Pleaded Allegations Cannot Be Defeated by Disputed Matters Outside the Pleadings.........................................................................................14

E.      The Complaint Plausibly Alleges that the Bona Defendants' Caused Mr. Manookian's Damages.........................................................................................16

V.      THE COMPLAINT PLEADS A CLAIM FOR BREACH OF FIDUCIARY DUTY ...............................................................................18

VI.     THE COMPLAINT PLEADS CLAIMS AGAINST BLANQUEZ AND HASSKAMP ........................................................................................19

VII.    CONCLUSION.....................................................................20

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## I.    INTRODUCTION

In the face of well-pleaded allegations of legal negligence and breach of fiduciary duty stemming from their failure to file a timely appeal—leading to the permanent dismissal of Plaintiff Brian Manookian's valuable antitrust case—Defendants Bona Law P.C., Jarod Bona, David Codell, Aaron Gott, Luke Hasskamp, and Luiz Blanquez (collectively, the "Bona Defendants") now take positions contrary to those they maintained in litigation and promoted to Mr. Manookian.  Their motion to dismiss and accompanying memorandum ("Mem.") fails to identify any deficiencies in the Complaint, instead relying on self-serving, after-the-fact legal analysis and unwarranted, unsupported inferences to litigate disputed factual questions prematurely at the pleading stage.

Far from "Monday-morning quarterbacking," Mr. Manookian seeks to hold his counsel accountable for failing to act reasonably and prudently in protecting his interests when they declined to file a notice of appeal based on a widely recognized exception to the final judgment rule that has been known to courts and purported appellate specialists for several decades.  Because the Complaint plausibly states allegations of negligence and breach of fiduciary duty that should be tested in discovery, the Bona Defendants' motion should be denied.

## II.    FACTUAL BACKGROUND

### A.    The Bona Defendants Hold Themselves Out as Specialists in Antitrust and Appellate Law, Including the Appeal Timing Question at Issue in this Case

The Bona Defendants are a California-based law firm, Bona Law PC ("Bona Law"), and five attorneys who are or were affiliated with the firm.  Compl., ¶¶ 7-14.

The Bona Defendants have repeatedly and publicly advertised their expertise in federal antitrust and appellate litigation.  Bona Law lists antitrust and

appellate law among their top "specialties."[1]   Bona Law Principal Jarod Bona advertises that he has "been an appellate litigator [his] entire career," clerking in the U.S. Court of Appeals for the Eighth Circuit, working in Gibson Dunn's Washington, DC, appellate group, and "participat[ing] in many appellate matters."[2] The Bona Defendants routinely advertise their services as "appellate lawyers" and "attorneys with appellate experience."[3]   In providing these services, Bona Law promises to give its clients "the highest level of advice and advocacy."[4]

The Bona Defendants have also publicly advertised their understanding of the appellate review timing issues central to this case.  On December 13, 2017, Defendant Aaron Gott, writing on behalf of Bona Law, posted a lengthy article on Bona Law's "The Antitrust Attorney Blog."[5]   In it, he discussed *SolarCity Corporation v. Salt River Project Agricultural Improvement and Power District*, 859 F.3d 720 (9th Cir. 2017), *cert. granted sub. nom Salt River Project Agricultural Improvement and Power District v. Tesla Energy Operations Inc.* (No. 17-368), an antitrust case in which the United States Supreme Court endeavored to resolve a circuit split on whether orders denying state-action immunity to public entities are immediately appealable under the collateral-order doctrine.  Gott took the position that an order denying a motion to dismiss on state-action immunity grounds should not be immediately appealable.  It should not, he argued, have to "await a final

---

[1] *See* Bona Law PC LinkedIn page, *available at* https://www.linkedin.com/company/bona-law-pc (describing Bona Law as a "boutique antitrust law firm" and listing antitrust and appellate law as "specialties") (accessed Sept. 9, 2021).

[2] Jarod Bona, "Why You Should Consider Filing an Amicus Brief in an Appellate Case," March 27, 2021, *available at* https://www.theantitrustattorney.com/why-you-should-consider-filing-an-amicus-brief-in-an-appellate-case/#more-856.

[3] Jarod Bona, "Three Reasons to Hire an Appellate Lawyer," May 29, 2021, *available at* https://bit.ly/2X0N7xr (accessed Sept. 9, 2021).

[4] IR Global, Jarod Bona Advisor profile, *available at* https://bit.ly/3neGpOX (accessed Sept. 9, 2021).

[5] Aaron Gott, "The US Supreme Court Should Affirm the Ninth Circuit in SolarCity: State-Action-Immunity Defendants Have No Right to an Immediate Appeal," Dec. 13, 2017, *available at* https://bit.ly/3BVjEnf.

4

decision just like most issues raised on a motion to dismiss."[6]  Gott did not mention any other exceptions to the ordinary rule that only final judgments can be appealed.

### B.  The Bona Defendants File Mr. Manookian's Antitrust Case

Brian Manookian is a Tennessee attorney who, since approximately 2015, has focused his legal practice on the representation of plaintiffs injured by the medical malpractice of physicians, hospitals, and health care providers.  Compl., ¶¶ 15-16.

On March 20, 2019, Mr. Manookian retained the Bona Defendants to represent him in a federal antitrust lawsuit ("the Antitrust Suit") on Mr. Manookian's behalf seeking recovery of significant economic, non-economic, and punitive damages due to the emergent suspension of Mr. Manookian's law license by a quasi-private, quasi-public state board substantially comprised of Mr. Manookian's competitors in the legal marketplace.  *Id.*, ¶¶ 17, 19.  The Antitrust Suit, styled *Manookian v. Flippin, et al.* (No. 19-cv-00350) was filed on April 29, 2019, in the United States District Court for the Middle District of Tennessee.  *Id.*, ¶ 19.

Before filing the Antitrust Suit, the Bona Defendants investigated the factual and legal bases for the case and concluded that it had merit and was non-frivolous. *Id.*, ¶ 20.  They repeatedly certified the merits of the Antitrust Suit, frequently telling Mr. Manookian his claims were meritorious, issuing a laudatory press release about the meritorious case, and posting at least one article about the case to the Bona Law website.  *Id.*, ¶ 21.[7]

---

[6] *Id.*

[7] *See* Jarod Bona, "Bona Law Sues Tennessee Lawyers on State Board for Lawyer Suspension Violating Antitrust Laws and US Constitution," May 7, 2019, *available at* https://bit.ly/3yUO9b6; Bona Law Press Release, "Bona Law Challenges Lawyer's State Bar Suspension under Antitrust Law and Constitution," June 5, 2019, *available at* https://bwnews.pr/3z11iiK.

**C.     The District Court Dismisses the Antitrust Suit**

On February 28, 2020, the United States District Court for the Middle District of Tennessee issued an order dismissing Mr. Manookian's claims for damages in the Antitrust Suit and staying his claims for declaratory and injunctive relief.  *Id.*, ¶ 22; (Doc. No. 5-2, Ex. 11).  The Court directed the clerk to administratively close the case.  *Id.*

Shortly after the issuance of the February 28, 2020 order, the Bona Defendants assured Mr. Manookian that the order was legally unsound and should be appealed.  Compl., ¶ 20.  The Bona Defendants expressly stated to Mr. Manookian in at least two (2) phone calls that United States District Court Judges are frequently unfamiliar with the nuances of antitrust law and that the Negligently Appealed Order would, in the view of the Bona Defendants, be overturned on appeal. *Id.*

**D.     Mr. Manookian's Appeal Is Dismissed After the Bona Defendants Fail to Timely File Notice of Appeal**

The Bona Defendants subsequently assured Mr. Manookian on multiple occassions that the February 28, 2020 order was not final and therefore not subject to the thirty (30) day deadline for appeal.  As a result, the Bona Defendants only filed a Notice of Appeal for the order one hundred and seventy-seven (177) days later. *Id.*, ¶¶ 21-22.

On January 5, 2021, the United States Court of Appeals for the Sixth Circuit issued an opinion finding that the Bona Defendants, on behalf of Mr. Manookian, had missed the deadline for filing the Notice of Appeal by one hundred and seventy-seven (177) days.  *Id.*, ¶ 23.  As a result, Mr. Manookian's substantial claims for damages (the merit of which the Bona Defendants attested to in scores of emails, press releases, laudatory articles, and federally filed pleadings) have been forever waived, lost, and foregone. *Id.*, ¶ 24.

Following the issuance of the Sixth Circuit's opinion, David Codell and Jarod Bona wrote to Brian Manookian falsely and fraudulently characterizing the Sixth Circuit's holding in an attempt to evade liability for their own negligence and gross recklessness.  The Bona Defendants additionally stated that any further attempts to appeal would be futile.  *Id.*, ¶ 25.

### E.    The Bona Defendants Continue to Display Ignorance About Appellate Timing Rules

To this day, the Bona Defendants advertise their lack of familiarity with exceptions to the final judgment rule, misleadingly advising potential clients:

> FCRP 54(b) states that a judgment or order is not final when it "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" in a lawsuit. In other words, if any part of the lawsuit is not resolved after the entry of the order or judgment, that order or judgment is not "final." This is also known as an interlocutory order.[8]

This information, which is contained in a lengthy section of the Bona Defendants' website that purports to provide "legal resources" about "calculating the deadline for a notice of appeal in federal court," fails even to note the existence of exceptions to the "final judgment rule"—including the "effectively out of court" exception that the Bona Defendants failed to recognize on Mr. Manookian's behalf.

## III.   LEGAL STANDARD

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true, construe the pleadings in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the plaintiff.  *Ass'n for Los Angeles Deputy*

---

[8] Bona Law PC website, "Legal Resources" section, "Calculating the Deadline for a Notice of Appeal in Federal Court," *available at* https://www.bonalaw.com/calculating-the-deadline-for-a-notice-of-appeal-in-federal-court.html (accessed Sept. 8, 2021).

*Sheriffs v. County of Los Angeles*, 648 F.3d 986 (9th Cir. 2011). Plaintiffs succeed in stating a claim for relief by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## IV. THE BONA DEFENDANTS CANNOT RESOLVE DISPUTED ISSUES OF FACT AT THE PLEADING STAGE

### A. The Complaint Plausibly Alleges that the Bona Defendants Breached Duties Owed to their Client

The Bona Defendants ask the Court to find—*as a matter of law*—that they are entitled to "judgmental immunity" because they exercised a reasonable degree of skill and care in "choosing to file a Rule 54(b) motion" rather than prudently appealing the February 28, 2020 order, in case the well-recognized "effectively out of court" doctrine controlled and the February 28, 2020 order was final and appealable. This request is based on nothing more than the unsworn argument of counsel and self-serving, after-the-fact legal analysis concerning the state of Sixth Circuit precedent. (*See* Mem. at 18-21.) In the face of well-pleaded allegations of negligence, in other words, the Bona Defendants ask the Court to substitute its judgment for the jury's on the ultimate issue in the case—whether their failure to appeal was negligent or demonstrated reasonable skill and care—before any discovery has been taken.

The Complaint alleges that "the Bona Defendants "assured Mr. Manookian that the [February 28, 2020] Order was legally unsound and should be appealed." Compl., ¶ 23. It alleges that the Bona Defendants expressly stated to Mr. Manookian in at least two phone calls that "United States District Court Judges are frequently unfamiliar with the nuances of antitrust law and that the [February 28, 2020] Order would, in the view of the Bona Parties, be overturned on appeal." *Id.*

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

It alleges that the Bona Defendants assured Mr. Manookian that the Order "was not final and therefore not subject to the thirty (30) day deadline for appeal," and that they therefore didn't appeal it. *Id.*, ¶¶ 24-25. It alleges that after Sixth Circuit dismissed Mr. Manookian's appeal, Defendants Codell and Bona wrote to Mr. Manookian "falsely and fraudulently characterizing the Sixth Circuit's holding in an attempt to evade liability for their own negligence and gross recklessness," and stating that any further attempts to appeal would be futile. *Id.*, ¶ 28. And it alleges that these actions breached the Bona Defendants' fiduciary duty and duty of care to Mr. Manookian, harming him. *Id.* ¶¶ 29-37. These allegations plainly, and plausibly, state claims for legal negligence and breach of fiduciary duty—claims that can be substantiated through factual and expert proof in discovery and weighed by a fact-finder.

### B. The Bona Defendants' *Post Hoc* Interpretation of Applicable Law is Both Self-Serving and Misguided

Because they cannot challenge the adequacy of Mr. Manookian's pleading, the Bona Defendants attempt to disprove—at the pleading stage—the ultimate issue in the case: whether their actions constituted negligence. In so doing, they attempt to relitigate the very issues they mishandled in the Sixth Circuit, apparently to suggest that it was aberrant, even unforeseeable, for the Court of Appeals to consider the February 28, 2020 dismissal and stay order final and appealable.

But the Bona Defendants overstate the novelty of the Sixth Circuit's holding, which was perfectly consistent with established precedent. It is true, and well known to any federal practitioner, that appellate courts are generally authorized only to consider appeals from final decisions of district courts—the so-called "final judgment rule." 28 U.S.C. § 1291. But among the handful of exceptions to the rule is the "effectively out of court" doctrine, which holds that when a stay, often entered pursuant to an abstention doctrine, effectively ends a litigant's rights in the federal forum, it "amounts to a dismissal of the suit," and an

appeal should be considered even if the order does not strictly amount to a final judgment.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 (1983).

The "effectively out of court" exception is intended to protect plaintiffs—*including Mr. Manookian*—who seek to have federal rights redressed in a federal forum.  It recognizes that by abstaining a district court may give state-court interpretations of federal constitutional issues res judicata effect; therefore, it encourages appeals from otherwise non-final orders where the state and federal proceedings involve issues that are "substantially the same," not just "identical." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1019 (7th Cir. 2014).  The "state-court action may not resolve everything," but the "key question for jurisdictional purposes is whether the 'object of the stay order is to require all *or an essential part* of the federal suit to be litigated in a state forum.'" *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 645 (7th Cir. 2021) (quoting *Moses Cone*, 460 U.S. at 10-11 n.11) (emphasis supplied in *Loughran*).  Because Mr. Manookian could assert his remaining constitutional claims only in the ongoing state proceedings, he was effectively out of federal court, making federal appellate review his only viable option to protect his interest in having federal courts review his constitutional claims.  *See Manookian v. Flippin*, No. 20-5979, 2021 WL 688841, at *2 (6th Cir. Jan. 5, 2021).[9]

---

[9] The Bona Defendants concede that their hypothetical arguments about Mr. Manookian's constitutional claims being left unadjudicated in state court failed to prevent the Sixth Circuit from rejecting their untimely appeal.  (Mem. at 20.)  More importantly, these arguments only showcase the Bona Defendants' unfamiliarity with the "effectively out of court" exception: it is applicable not merely where a state court will definitely resolve every remaining issue with preclusive effect, but also where a federal district court enters a stay with the expectation that the state litigation would "largely" resolve the federal litigation—even if "there remains some chance that the case will return to federal court to dispose of residual issues."  *Loughran*, 2 F.4th at 646.

The Bona Defendants even persist in contending that the form of the District Court's order was not a judgment in a separate document because it was a "longer order that addresses five different filings and recites the procedural history of the case." (Mem. at 21.) But the Sixth Circuit panel yet again disagreed, finding—unanimously—that the "two-page order set out only the motions and responses thereto, and brief rulings on each," omitted most judicial reasoning, had a separate caption, was separately signed by the Court, was separately paginated, and was separately docketed by the clerk. It was, for all intents and purposes, a separate judgment, the Sixth Circuit held. *Manookian*, 2021 WL 688841, at *2.

In short, it is little surprise that the Bona Defendants believe the Sixth Circuit's determination was "in significant tension with" the final judgment rule (Mem. at 19), grouse that the panel failed "even [to] *mention* any of Bona Law's arguments on that point" (Mem. at 20 (emphasis in original)), or view the Sixth Circuit's holding as an "unusual position," (*id.*). After all, they are the ones who got it wrong the first time.

### C.  Whether the Bona Defendants Exercised Professional Judgment in Declining to Appeal Is the Central Dispute in this Case

Regardless, whether the Bona Defendants' decision not to appeal constituted a reasonable exercise of skill and care is *not for the Bona Defendants to determine*, particularly through the unsworn assertions of counsel in support of a motion to dismiss. It is also not for the Court to determine, at this stage of the case, given Mr. Manookian's well-pleaded allegations of negligence. Discovery will reveal any conversations or decision-making that preceded the Bona Defendants' actions, shedding light on what motivated the choice not to appeal. And expert testimony will establish whether a reasonably prudent lawyer in the Bona Defendants' position should have filed a notice of appeal, risking that the Sixth Circuit might reject it as premature—which would not have ended Mr. Manookian's case—or instead assume the February 28, 2020 order was not final

and appealable, risking that the Sixth Circuit might hold otherwise, effectively ending Mr. Manookian's case. *See Allied Waste N. Am., Inc. v. Lewis, King, Krieg & Waldrop, P.C.*, 93 F. Supp. 3d 835, 854 (M.D. Tenn. 2015) (discussing requirement of expert testimony to establish professional standard of care for attorneys practicing law in Tennessee).

Other attorneys' actions in similar circumstances will likewise shed light on the "degree of care, skill, and diligence commonly possessed and exercised" in the relevant field and jurisdiction. (Mem. at 18 (quoting *Horton v. Hughes*, 971 S.W.2d 957, 959 (Tenn. Ct. App. 1998)). When developed, the record will reflect that, confronted with the same dilemma between the final judgment rule and the "effectively out of court" exception, other attorneys chose to timely appeal rather than risking dismissal of an entire action—establishing both the applicable standard of care the Bona Defendants' violation thereof.

In *Herrera v. City of Palmdale*, which the Sixth Circuit relied on in dismissing the Antitrust Suit, plaintiffs filed a federal lawsuit challenging the city of Palmdale's municipal civil inspection warrant and code-violation order, contending these actions violated 42 U.S.C. § 1983 and the Fair Housing Act. 918 F.3d 1037, 1041-42 (9th Cir. 2019). Almost simultaneously, the city filed a state-court nuisance action. Citing *Younger*'s abstention requirement, the federal district court dismissed the Herreras' claims for declaratory and injunctive relief and stayed the claims for damages. The Herreras' attorney—an apparent solo practitioner without a public website—evidently realized the need to appeal the order, and Ninth Circuit rejected Palmdale's argument that the appeal was premature. It held that the stay was "effectively a final decision and thus the district court order [was] final for purposes of appellate review." *Id.* at 1043 (citing *Parris v. Taft*, 630 F. App'x 895, 898 (11th Cir. 2015) ("Because the district court stayed the case until Mr. Parris's related state criminal proceedings were resolved, the order left him

effectively out of court. Thus, the order is a final decision, and we have appellate jurisdiction.").

If the Herreras' attorney, faced with a decision about the time to file a notice of appeal, could figure out how to protect his clients' rights while challenging a district court abstention order, there is no reason the Bona Defendants couldn't too—particularly with the benefit of *Herrera* itself.[10]

Not only had the Ninth and Eleventh Circuits recently reaffirmed the "effectively out of court" exception in analogous circumstances before the Bona Defendants' "strategic decision" not to appeal the February 28, 2020 order, (Mem. at 21), but the Sixth Circuit had just weighed in on it too.  In *Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390, 393 (6th Cir. 2019), the Court *sua sponte* considered whether it had jurisdiction over an appeal from a dismissal and stay order on *Younger* abstention grounds, reasoning that because the state court order would be res judicata in the federal case, the appellant would be "effectively out of court," so jurisdiction was appropriate.

The Bona Defendants now suggest—offering no support, since this action is at the pleading stage—that they weighed the risks of giving the district court's opinion res judicata effect in state court against the risk of losing the entire antitrust case, and made the "strategic" choice not to appeal.  (Mem. at 20-21.)  Discovery will reveal whether and to what degree any such analysis was performed.  But at this stage of the litigation, dismissal is unwarranted based on the Bona Defendants' mere assertion that they made a strategic choice, and that it was a reasonable exercise of skill and care.  The applicable standard of care—and these defendants'

---

[10] Indeed, *Herrera* was hardly a secret: it was relied on by a Middle District of Tennessee opinion discussing *Younger* abstention while Mr. Manookian's case was pending in the same district.  *See Ingram v. Tennessee Dep't of Health*, No. 3:17-CV-01565, 2019 WL 1429644, at *7 (M.D. Tenn. Mar. 29, 2019), *report and recommendation adopted as modified*, No. 3:17-CV-01565, 2019 WL 4727641 (M.D. Tenn. Sept. 27, 2019).

compliance with it—must be proved and tested in discovery.  Self-serving, after-the-fact assurances do not afford a basis for dismissal.

### D.     Well-Pleaded Allegations Cannot Be Defeated by Disputed Matters Outside the Pleadings

Evidently recognizing that the factual allegations of the Complaint state a claim, at least, for professional negligence, the Bona Defendants' dismissal effort relies on a host of matters outside the pleadings, asking the Court to draw ultimate conclusions about disputed issues regarding the merits of the underlying antitrust case based on "judicial notice" of the controverted state proceedings and federal district court orders their own antitrust case was challenging.  While the Court may take judicial notice of the existence of public records, the Bona Defendants may not use them to advance a self-serving interpretation of the disputed events in this case—particularly when the Bona Defendants themselves took contrary positions in the underlying litigation—before Mr. Manookian has an opportunity to prove his claims.

Federal Rule of Evidence 201 permits courts to take judicial notice of facts "not subject to reasonable dispute," including those that are "generally known" or those that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  It is well-settled that a court "cannot take judicial notice of disputed facts" in public records.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).  Nor can defendants "use the [judicial notice] doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims."  *Id.* at 1002.  To the extent a court takes judicial notice of a public record, it "must also consider—and identify—which fact or facts it is noticing from such a [record].  Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."  *Id.* at 999.

Here, the Bona Defendants do not specify which facts of which they want the Court to take notice. They merely ask the Court to take notice of a host of public filings, orders, and a website, all of which they then rely upon to argue—contravening their prior positions, and drawing inferences in their favor, not Mr. Manookian's—that Mr. Manookian's antitrust loss was a foregone conclusion. But here, the merits of the state disciplinary proceedings and federal antitrust case are the facts in dispute. The Court may take notice of the fact of these proceedings, but not the merits of the underlying disputed issues, much less Defendants' newfound, self-serving analysis of them.

To the extent the Court deems it appropriate to take judicial notice of the seventeen (17) documents filed by the Bona Defendants in support of the Motion and one document filed the business day before Mr. Manookian's opposition was due (Doc. Nos. 5-2 & 14), the Court should likewise take judicial notice of the legal memoranda filed by the Bona Defendants on Mr. Manookian's behalf that contradict their positions in the instant case:

- Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order, filed Oct. 26, 2019, Case No. 3:19-cv-00350 (M.D. Tenn.) (attached as Ex. 1); and
- Corrected Reply in Support of Plaintiff's Motion for Preliminary Injunction, filed Nov. 18, 2019, Case No. 3:19-cv-00350 (M.D. Tenn.) (attached as Ex. 2).

As these briefs make clear, the Bona Defendants continued to maintain—after the October 11 and 17, 2019 Tennessee Supreme Court orders they now claim foreclose his case as a matter of law—that Mr. Manookian's due process and First Amendment rights were violated when his license was suspended without a fair prompt adjudication on the merits, reinstatement proceedings were adjudicated by two panel members with an "irreconcilable and obvious conflict of interest regarding the outcome of the proceedings," and repeated efforts to

15

suspend Mr. Manookian's law license constituted unconstitutional retaliation in violation of his First Amendment rights.  *See* Ex. 1 (Bona TRO Memorandum) at 14-21.

Plaintiffs likewise ask the Court to take judicial notice of the Bona Defendants' public statements identified in Section II.  *See supra* n. 1-8.

### E.   The Complaint Plausibly Alleges that the Bona Defendants' Caused Mr. Manookian's Damages

After filing Mr. Manookian's antitrust claims, publicly touting them as meritorious, Compl., ¶ 21, (discovery will reveal) subsequently encouraging Mr. Manookian to pursue additional antitrust claims related to his new suspension, a repeatedly advising him that the February 28, 2020 order was "legally unsound" and would "be overturned on appeal," *id.* ¶ 23, the Bona Defendants now perform an about-face, insisting that Mr. Manookian's antitrust claims either lacked merit all along, (*see* Mem. at 24 n.6 (describing, without support, the "significant hurdles" and "inherent difficulty" of the claims), n.7 (characterizing, without support, his claims as "an uphill battle")), or "became an unwinnable endeavor" because of his actions (*id.* at 24-25, n. 7).  But dismissal requires more than the Bona Defendants' assurance that the Sixth Circuit "would likely have affirmed the federal trial court's motion to dismiss."  *Id.* at 24.  After all, their track record for predicting Sixth Circuit outcomes speaks for itself.

The Complaint plausibly alleges that as a result of the Bona Defendants' negligence, "Mr. Manookian's substantial claims for damages (the merit of which the Bona Parties attested to in scores of emails, press releases, laudatory articles, and federally filed pleadings) have been forever waived, lost, and foregone." Compl., ¶ 27.  It further alleges that the Bona Defendants' breaches of duties caused damages to Mr. Manookian in an amount to be determined at trial.  *Id.*, ¶¶ 33, 37. And it alleges that the Bona Defendants themselves repeatedly informed him that the February 28, 2020 order "would, in the view of the Bona Parties, be overturned

16

on appeal." *Id.*, ¶ 23. This sufficiently alleges that the Bona Defendants caused Mr. Manookian's injuries.

The Bona Defendants now contend that Mr. Manookian could not recover damages from the BPR defendants because a subsequent order of the Tennessee Supreme Court clarifies that he was suspended "for distinct reasons unrelated to the allegedly anticompetitive conduct," rendering him unable to show that the Bona Defendants' conduct caused his damages. Mem. at 24 (citing *Atl. Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328, 334 (1990)). This position cannot be credited as it is belied by their own contemporaneous statements, after the temporary suspension was reinstated, in which they continued to vouch for the merits of the appeal. Compl., ¶ 23.

It is also wrong on the merits for at least three additional reasons. First, the Bona Defendants' failure to timely appeal the February 28, 2020 order caused Mr. Manookian a distinct financial injury independent of the merits of his underlying antitrust claim: by virtue of being the losing party in an antitrust action, Mr. Manookian is now subject to claims for attorneys' fees and costs by each of the nine defendants in the underlying antitrust case—hardly an insubstantial amount of damages. *See* 15 U.S.C. § 4304 (antitrust fee-shifting statute). By failing to timely appeal the order, the Bona Defendants cemented the BPR defendants' status as prevailing party, exposing Mr. Manookian to liability and foreclosing his ability to negotiate any other resolution to the action.

Second, a reasonable fact-finder here could conclude that had the Bona Defendants timely appealed the February 28, 2020 order, the Sixth Circuit would have reinstated Mr. Manookian's antitrust damages claims and accepted the Bona Defendants' related argument—that the temporary suspension was reinstated on the recommendation of market competitors in violation of Mr. Manookian's due process and First Amendment rights—effectively invalidating the reinstated suspension. *See* Ex. 1 (Bona TRO Memorandum at 1-2). Finally, accepting for the

sake of argument the Bona Defendants' contention that Mr. Manookian cannot show antitrust injury after his temporary suspension was reinstated, his damages (subject to trebling) can nonetheless be measured between May 17 and November 17, 2019, a time period not disputed in the Bona Defendants' damages argument.

Plaintiff plausibly alleges that but for the Bona Defendants' conduct in failing to appeal, he would have prevailed—a position the Bona Defendants themselves took.  Compl., ¶ 23.  They cannot now disclaim that position just because it suits them in litigation.[11]

## V.  THE COMPLAINT PLEADS A CLAIM FOR BREACH OF FIDUCIARY DUTY

Tennessee courts have recognized a claim for breach of fiduciary duty that is distinct from legal malpractice claim when the former is not wholly duplicative of the latter.  In *Allied Waste*, a federal district judge in the Middle District of Tennessee—considering a motion for summary judgment—found that a failure "to keep plaintiffs reasonably informed about critical decisions in the litigation" supports a claim for breach of fiduciary duty that is distinct from a legal malpractice claim.  93 F. Supp. 3d at 860 (collecting relevant authority).

Here, in addition to legal malpractice, the Complaint alleges that Defendants Codell and Bona "wrote to Brian Manookian falsely and fraudulently characterizing the Sixth Circuit's holding in an attempt to evade liability for their

---

[11] The Bona Defendants' other causation arguments miss the mark.  Mr. Manookian is not akin to a "guilty criminal defendant" alleging malpractice against his lawyer," (Mem. at 25 (citing an unreported Tennessee case involving a defendant wearing prison garb at trial)).  Until disclaiming that position, the Bona Defendants themselves attested that Mr. Manookian was a victim of constitutional and statutory deprivations of his rights.  The Bona Defendants' contention that Mr. Manookian's federal constitutional claims are barred by claim and issue preclusion because he raised them, or could have, in the state-court proceeding and did not seek review in the U.S. Supreme Court is similarly unavailing.  (Mem. at 26.)  This argument is speculative, lacks development or citation to the record, and ignores the fact that the federal claims could have been litigated in federal court in the first instance had the Bona Defendants not failed to timely file an appeal of the district court's abstention decision.

18

own negligence and gross recklessness" and that "The Bona Parties additionally stated that any further attempts to appeal would be futile." Compl., ¶ 28. This breached their duty to represent Mr. Manookian with honesty and diligence and keep him accurately informed about matters in the litigation. *Id.*, ¶ 35; *see also Halstead v. Murray*, 130 N.H. 560, 547 A.2d 202 (1988) (stating that if client is not adequately informed "then the client may have recourse to suit against the attorney for breach of his fiduciary duty zealously to protect the interest of his client"). Because Mr. Manookian's claim for breach of fiduciary duty is not wholly duplicative of his legal negligence claim, it should not be dismissed at the pleading stage.

## VI.   THE COMPLAINT PLEADS CLAIMS AGAINST BLANQUEZ AND HASSKAMP

Rule 8's ordinary notice pleading requirement, not Rule 9(b)'s heighted requirement, applies to ordinary negligence claims. *See Mansour v. Raynor Mktg., Ltd.*, No. CV 13-02085 MMM (EX), 2013 WL 12126093, at *5 (C.D. Cal. July 25, 2013). And "the burden imposed by Rule 8(a)(2) is a minimal one." *Countrywide Home Loans, Inc. v. U.S. ex rel. I.R.S.*, No. CVF026405 AWISMS, 2005 WL 1355440, at *3 (E.D. Cal. Apr. 29, 2005). Where "it may be presumed that Defendants are in sole possession of facts needed to support or refute the claims" and the Complaint "provides notice to Defendants regarding what information will be sought from what sources during discovery," a complaint satisfies Rule 8's notice pleading standard. *Davis v. Cty. of Riverside*, No. EDCV161323JGBKKX, 2016 WL 11595141, at *5 (C.D. Cal. Aug. 18, 2016).

Here, Defendants know far better than Mr. Manookian who took which actions with respect to the legal decisions made in conjunction with Mr. Manookian's case. Nonetheless, the Complaint sets forth detailed allegations of negligence by the Bona Defendants, all of whom are known to Mr. Manookian to have been lawyers involved in representing him. The Complaint alleges that Mr.

1   Blanquez is a California attorney and Mr. Hasskamp is a Minnesota attorney.

2   Compl., ¶¶ 11-12.  They are among the Bona Parties, and served as principals of,

3   or agents for, each other defendant.  *Id.*, ¶ 13.  Each of them either participated

4   personally in the conduct challenged in the complaint or authorized, acquiesced, set

5   in motion, or otherwise failed to take necessary steps to prevent the negligence

6   described in the Complaint.  *Id.*, ¶ 14.  Where, as here, detailed information about

7   which attorney played which role in legal decision-making lies in the exclusive

8   possession of the Bona Defendants, and the Bona Defendants have sufficient notice

9   about what information will be sought from which sources in discovery, it would

10  be inefficient and unjust to dismiss Defendants Blanquez and Hasskamp from the

11  action at the pleading stage.

12  **VII.   CONCLUSION**

13       For the foregoing reasons, the Bona Defendants' Motion to Dismiss should

14  be denied in its entirety.[12]

---

[12] In the event the Court determines that the motion should be partially or wholly granted, Mr.
Manookian requests leave to amend the Complaint to cure any deficiencies.

Dated: September 14, 2021

**SPRAGENS LAW PLC**

By: _/s/ John Spragens_

John Spragens, TN Bar No. 31455
_(Pro Hac Vice)_
311 22nd Ave. N.
Nashville, TN 37203
Telephone: (615) 983-8900
Facsimile: (615) 682-8533
john@spragenslaw.com

_Lead Counsel for Plaintiff_

**JOHNSON FISTEL, LLP**
FRANK J. JOHNSON
KRISTEN O'CONNOR
655 West Broadway, Suite 1400
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856
frankj@johnsonfistel.com
kristeno@johnsonfistel.com

_Local Counsel for Plaintiff_

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS